[Civ. No. 2032.   First Appellate District.—May 14, 1917.]

MARY E. WILLIAMS, Respondent, v. UNION TRUST SAVINGS BANK OF SANTA ROSA (a Corporation), Defendant; ERNEST D. WOODMAN, as Executor, etc., Appellant.

TRUST—CHANGE OF FORM OF SAVINGS BANK ACCOUNT.—Where a depositor in a savings bank in carrying out her long existing intention to so arrange her account that both she and her sister, with whom she had lived and who had taken care of her in her invalid condition for several years, might separately draw upon it, and upon her death the balance become the property of the sister without the formalities of probate proceedings, signed a card, at the request of the bank, providing that the two might draw on the account, but which said nothing as to the right of the survivor to the balance of the deposit, and after the card was returned to the bank expressed herself as satisfied with the transaction, a trust was thereby created in the deposit in favor of the sister, where it was shown that the card signed was the form then in use by the bank in making deposit accounts in the name of more than one person subject to the check of either and balance payable to survivor.

APPEAL from an order of the Superior Court of Sonoma County denying a new trial.   Thomas C. Denny, Judge.

The facts are stated in the opinion of the court.

R. L. Thompson, Wilson & Wilson, and P. L. Benjamin, for Appellant.

James W. Oates, for Respondent.

KERRIGAN, J.—This is an appeal by Ernest D. Woodman, one of the defendants, from an order denying his motion for a new trial in an action brought by the plaintiff against said Woodman, as executor of the will of Laura M. N. Huntoon, deceased, and the defendant bank to recover the balance of a certain deposit in said bank.

This case, in many of its facts, is like the case of *Mary E. Williams* v. *Savings Bank of Santa Rosa et al., ante,* p. 655, [166 Pac. 366]. The deceased, at the time of her death, had been an invalid for about twelve years. She and the plaintiff were sisters and were very fond of each other.

The deceased lived with the plaintiff and had been tenderly nursed by her all of that time, and in appreciation of such loving care, and in consideration of the bond of affection existing between them, she had intended for a long time, it appears from the record, to arrange her savings bank account so that both she and the plaintiff might separately draw upon it, and that on her death the balance of the deposit should belong to and become the property of the plaintiff without the formalities of probate proceedings. Accordingly, some time in the early part of the year 1912, the deceased sent the plaintiff's daughter, Mrs. Laura Cragin, to the defendant bank to request that the necessary changes be made in the account so as to effectuate her theretofore often expressed desire concerning the matter. Mrs. Cragin called upon the cashier of the bank, and, according to her testimony, told him that her mother and the decedent desired that the account be changed so that either the plaintiff or the deceased might draw upon it, and that when the decedent ''was gone'' the money in the bank would belong to the plaintiff. The cashier thereupon gave to Mrs. Cragin a signature card to be signed by her mother and aunt. This card was filled in with the desired signatures and returned to the bank, but provided only by its terms that either of the two sisters might draw against the account, saying nothing as to the right of the survivor to the balance of the deposit. The cashier, however, testified that this was the form then used by the bank in making deposit accounts in the name of more than one person subject to the check of either and balance payable to the survivor. After the signature card had been filled in and returned to the bank the deceased, believing that her instructions had been carried out, expressed herself as relieved in mind about a matter that had been worrying her for some time, and that she was glad that upon her death so much of the fund as then remained would go to the plaintiff without the necessity of probate proceedings.

There is some doubt, under the circumstances of this case, whether it falls within the provisions of section 16 of the Bank Act of 1911; but there is no doubt in our minds that such circumstances show the creation of a trust for the benefit of the plaintiff under the rule laid down in the case of *Booth* v. *Oakland Bank of Savings*, 122 Cal. 19, [54 Pac. 370], as re-

cently adopted and applied by this court in the case of *Drink-house* v. *German Sav. & Loan Society,* 17 Cal. App. 162, [118 Pac. 953].

Order affirmed.

Lennon, P. J., and Richards, J., concurred.