### CLARY v FITZGERALD.

(Supreme Court, Appellate Division, Fourth Department. March 5, 1913.)

1. BANKS AND BANKING (§ 301*)—SAVINGS BANKS—JOINT DEPOSITS—STATUTORY PROVISIONS.

Under Banking Law (Consol. Laws 1909, c. 2) § 144, which provides that when a deposit is made in the names of such depositor "and" another person, and in form to be paid to either or the survivor of them, such deposit and any additions thereto shall become the property of such persons as joint tenants, etc., a deposit in a savings bank to the credit of "C. or F., either or survivor may draw," makes both persons joint owners of the deposit in the absence of a showing that the contrary was intended.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1159, 1162–1164, 1166–1168, 1172–1176; Dec. Dig. § 301.*]

2. STATUTES (§ 206*)—CONSTRUCTION.

If possible, a statute should be so construed as to give effect to every part of it.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 283; Dec. Dig. § 206.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Onondaga County.

Action by Mary Clary, Katherine Connelly's administratrix, against Katherine Fitzgerald. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, with directions.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

William H. Bamerick, of Syracuse, for appellant.

Edward C. Ryan, of Syracuse, for respondent.

ROBSON, J. [1] On and for some time prior to May 23, 1911, plaintiff's intestate, Katherine Connelly, had a deposit in her own name in the Onondaga County Savings Bank which then amounted to $1,-578.71. On that day, at her request, the defendant, Katherine Fitzgerald, her niece, went with her to the bank, where she withdrew the entire amount so standing to her credit, and, retaining therefrom the sum of $100, immediately redeposited in the bank the balance of $1,-478.71 in a new account for which a pass book was issued by the bank in which appears the following entry thereof:

"Dr. Onondaga Savings Bank to Mrs. Kate Connelly or Mrs. Kate A. Fitzgerald, either or survivor may draw.                                         Cr.
    "May 23                                                                       $1,478.71."

It appears that the intestate was the Mrs. Kate Connelly named in this account, and the Mrs. Kate A. Fitzgerald named therein is the defendant Katherine Fitzgerald. Katherine Connelly died intestate on September 5, 1911. No money was drawn from, nor were any deposits made to the credit of, this account during the period intervening between the time the account was opened and the death of intestate. On September 27, 1911, defendant withdrew therefrom the sum of $1,000. Thereafter plaintiff, as the administratrix of intestate's estate, brought this action to recover the sum so withdrawn. Beyond showing the facts as to the deposits above stated, plaintiff produced little direct evidence of any facts or circumstances indicating intestate's intention in making the redeposit of her funds with the bank in the form of account above stated. It was shown that intestate was at that time about 75 years of age and physically feeble. She had resided with plaintiff, who was also her niece, for about 1½ years; and her next of kin were plaintiff and defendant and other nephews and nieces. Plaintiff also gave evidence of statements made by defendant which might indicate that she personally would receive, or was entitled to receive, from defendant a part of the money represented by this deposit. In addition, there was evidence of an admission by defendant tending to show that she had not had possession of the bank book until a few days before the intestate's death.

It is apparent that plaintiff's direct evidence of facts other than those indicated by the deposit as made, which has been summarized above, was not of sufficient probative force to establish as a fact that intestate did not appreciate and intend the complete legal effect of the deposit of her funds in the form in which she made it. Defendant produced evidence of statements by intestate which, if believed by the

jury, would have warranted a finding that intestate did actually intend to create, and understood that she had established, a joint ownership of this deposit in herself and defendant. The court held that on this evidence a question of fact was presented for the jury's decision, and in the course of his charge said:

"In view of such a transaction as the present, in view of the fact that Miss Connelly made this transfer, notwithstanding that fact, the burden is still upon the defendant to show by a preponderance of evidence that the transaction constituted a gift between Miss Connelly and the defendant. There is not a presumption from the mere fact of the book being issued in this way and the account being put in this form that a gift was intended. The defendant must satisfy you by a preponderance of evidence that such was the intention of Miss Connelly before you can find that the transfer of this money was made from the one to the other."

To this defendant duly excepted; and requested the court to charge:

"That the burden of proof is upon the plaintiff to show that such was not the intention of the deceased at the time this account was opened."

To this request the court responded:

"I charge again that the mere fact that the account stood in the form that it did stand does not constitute any evidence—is not prima facie evidence that a gift was intended."

The defendant duly excepted. In so instructing the jury the learned court was not unmindful of the recent legislation on this subject, to which reference will presently be made; but apparently felt constrained to follow the interpretation of this enactment adopted by the justice who presided at a previous trial of this case. The record seems also to show that, had the court adopted the view that the. form of the deposit was itself presumptive evidence of intestate's intention to create a joint ownership in the fund, he would have held that plaintiff had failed to make a case, and would have granted defendant's motion to dismiss the complaint.

By section 144 of the Banking Law (Consol. Laws, c. 2; Laws of 1909, c. 10), it is among other things provided as follows:

"When a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons upon the making thereof shall become the property of such persons as joint tenants and the same together with all interest thereon shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof."

It may be conceded that, had this provision not been added to the Banking Law, the charge of the trial court above referred to would have been correct. As was said by Hiscock, J., in Kelly v. Beers, 194 N. Y. 49, 55; 86 N. E. 980, 982 (128 Am. St. Rep. 543):

"It has been written, however, in various decisions that the mere form of the account in such a case as this will not be regarded as sufficiently estab-

lishing the intent of the person making it to create a trust in behalf of another or to give to such another joint interest in or ownership of the deposit [citing cases]."

The effect of this added provision has not been directly at issue in any reported decision to which our attention has been called. In the case of Bonnette v. Molloy, 153 App. Div. 73, 138 N. Y. Supp. 67, in discussing the effect of a deposit similar in form to that before us in the present case, Laughlin, J., incidentally refers to the added provisions, and says:

"If the moneys had been deposited after the enactment of this statutory provision, there could be no question but that the defendant [the survivor] would be entitled to the fund."

The effect of this same provision of the law is thus stated in Brady on Bank Deposits, p. 46:

"It must be added that, under a New York statute, a deposit of this character would to-day create an estate in joint tenancy, even without the delivery of the pass book. But, under that statute, once the deposit is opened, and the estate in joint tenancy created, the depositor cannot revoke the gift or take it back. If he draws the money and uses it, he is accountable to the donee as any other joint tenant of personal property would be."

(It may be observed that equivalent statutory provisions were in 1909 adopted in California and Michigan.)

The fact that this deposit was entered in form to the credit of intestate "or" defendant by name, instead of to the credit of intestate "and" defendant, does not change the effect of the deposit as being one in the names of both. Matter of Meehan, 59 App. Div. 156, 69 N. Y. Supp. 9; McElroy v. Albany Savings Bank, 8 App. Div. 46, 40 N. Y. Supp. 422. The deposit was one within the classification of the statute, made by the intestate in the names of herself "and another person and in form to be paid to either or the survivor of them." It would seem, therefore, if any effect is to be given to the direct and explicit language of the statute, this deposit, as the statute provides, thereupon, presumptively at least, became the property of the designated depositors "as joint tenants"; i. e., as joint owners. But it is urged that this enactment was not intended for the purpose of determining the property rights and relations of the depositors in a fund so deposited, but was for the exclusive purpose of protecting the bank with which the deposit was made in making payments to the depositors from the fund. In support of this position, we are reminded that the policy of the law in this state does not favor joint ownership either of real or personal property. Commercial Bank v. Sherwood, 162 N. Y. 310, 320, 56 N. E. 834; Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945; De Puy v. Stevens, 37 App. Div. 289, 294, 55 N. Y. Supp. 810; Overheiser v. Lackey, 207 N. Y. 229, 100 N. E. 738. It is also suggested that, if a rule affecting the rights of property had been intended, it would not have been included in the Banking Law; and would have found its more appropriate place in the Personal Property Law (Consol. Laws 1909, c. 41). But it should be observed that this provision was simply an added subdivision to the provisions, which had for some years earlier been the corresponding section of

the Banking Law. One of these earlier provisions in terms establishes the property rights of an infant in a deposit made by or for him in his name. It is also argued that the provision limiting the effect of a payment by the bank to and receipt and acquittance therefor by either or the survivor of such depositors as a discharge of the bank to the extent of such payments to those which were made prior to the receipt by the bank of notice in writing not to pay in accordance with the terms of the deposit indicates the sole purpose of the provision to be for the protection of the bank itself in paying out such deposits. But the part of the provision which in terms declares that a deposit made in the form described therein shall thereupon become the property of the depositors as joint tenants was mere surplusage, if the purpose of the statute is to be limited only to prescribing to whom and under what conditions the bank might safely pay such deposits.

[2] Of course, it should be assumed that every provision of a statute was intended to serve some useful purpose; and effect should be given, if possible, to every part of it. Allen v. Stevens, 161 N. Y. 145, 55 N. E. 568; People ex rel. Killeen v. Angle, 109 N. Y. 564, 17 N. E., 413. We think, therefore, that the necessary effect of this provision of the statute is that the single fact, unexplained by other competent evidence, that a deposit in a Savings Bank in the form in which this deposit was made fixes the respective rights of the depositors named as joint owners of the property with all the incidents attaching to such ownership. It may be true that the depositors or their representatives as between themselves may be permitted to show by other competent evidence that title as joint owners was not intended to be established nor in fact conferred. Inasmuch as the actual agreement as to the title would be one between the named depositors themselves, the bank would not be a party to that agreement as to the ownership of the fund; and such an agreement might doubtless be proved even by parol evidence in a controversy between the parties to fix their relative rights to the fund. Folinsbee v. Sawyer, 157 N. Y. 196, 199, 51 N. E. 994, and cases there cited.

We conclude, therefore, that the deposit in the bank of the fund in the form in which it was made was sufficient in the first instance to establish in this action a joint ownership in the fund with the attendant right of survivorship therein, and that no evidence of a contrary intention was presented by plaintiff. It follows that the judgment and order should be reversed, with costs, and judgment for defendant dismissing the complaint, with costs, should be directed. All concur, KRUSE, J., in result only, McLENNAN, P. J., concurring for reversal, but voting for granting a new trial.